ORIGINAL

# MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

CV10- 5494

| United States District Court | District Eastern District Of NY. |
|---|---|

| Name: Kenneth D. Cobb | Docket or Case No.: cr-04-205 (s) (FB) |
|---|---|

| Place of Confinement: Victorville FCI One P.O. Box 5300, Adelanto, CA 92301 | Prisoner No.: 63082-053 |
|---|---|

| UNITED STATES OF AMERICA | Movant (include name under which convicted) Kenneth D. Cobb |
|---|---|
| v. | |

## MOTION

BLOCK, J.

1. (a) Name and location of court that entered the judgment of conviction you are challenging: THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK.

   225 Cadman Plaza East, Brooklyn, NY 11201

   (b) Criminal docket or case number (if you know): cr-03-964 (FB) cr-04-205 (FB) (s-1)

2. (a) Date of the judgment of conviction (if you know): December 27, 2007

   (b) Date of sentencing: December 13, 2007

3. Length of sentence: 210 months

4. Nature of crime (all counts): 21 U.S.C. 841 Conspired To Possess and Distribute Heroin and Cocaine. 18 U.S.C 1951 Conspiracy to Commit Robbery. 18 U.S.C 922(g) Possession Of A Firearm By A Felon.

5. (a) What was your plea? (Check one)

   (1) Not guilty ☐    (2) Guilty ☒    (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? _____

   RECEIVED NOV 0 2 2010 PRO SE OFFICE

6. If you went to trial, what kind of trial did you have? (Check one)    Jury ☐    Judge only ☐

7. Did you testify at either a pretrial hearing, trial or post-trial hearing?    Yes ☒    No ☐

8. Did you appeal from the judgment of conviction?    Yes ☒    No ☐

9. If you did appeal, answer the following:

(a) Name of court: UNITED STATES <del>DISTRICT</del> COURT OF APPEALS FOR THE SECOND CIRCUIT.

(b) Docket or case number (if you know): 08-0051-cr

(c) Result: Affirmed District Court's Decision

(d) Date of result (if you know): February 13, 2009

(e) Citation to the case (if you know): Filed under seal, United States v. Doe

(f) Grounds raised: (1) The court should <del>review</del> review Cobb's arguments that his rights to counsel were violated. (2) The government overlooks the significanes of the district court's credability determination in denying Cobb's right/motions for new counsel.

(g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐  No ☒  x  NO

If "Yes," answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(5) Grounds raised: _____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐   No ☒

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, application?

     Yes ❑  No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

  (1) Name of court: _____

  (2) Docket or case number (if you know): _____

  (3) Date of filing (if you know): _____

  (4) Nature of the proceeding: _____

  (5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ❑  No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction the action taken on your motion, petition, or application?

  (1) First petition:      Yes ❑  No ❑

  (2) Second petition:    Yes ❑  No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

_____

_____

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** THE GOVERNMENT VIOLATED THE DEFENDANT COBB"S RIGHT TO COUNSEL AT A CRITICAL MOMENT.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): The record duly note that the defendant's cooperation agreement included a waiver provision, such waiver state, "the defendant agrees that the office may meet with and debrief him without the presence of counsel," end quote. On approximately the 18th day of August, 2005, a meeting of three ASSISTANT UNITED STATES ATTORENY AND TWO CASE AGENTS occurred with Cobb. Said meeting started out as a "meet and debrief". All witnesses concurred that the questioning later became accusatory, prompting a confrontational atmosphere. Due to the defendant Cobb having counsel attached outside the scope of the waiver provision "meet and debrief", a distinct set of constitutional safeguards aimed

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☑  No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐  No ☐

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐  No ☐

Continuation of Page 5,
   Supporting Ground
         One:

At preserving the sanctity of the attorney-client
relationship takes effect, so when the government's
relationship with Cobb moved from Interviewer-
Interviewee to Interrogator-suspect, this made
the waiver null and void, this, in the duty
of good faith and fair dealings implicit in the
Cooperation agreement, triggering the government's
obligation to actively facilitate counsel's
representation of Cobb, as this situation demanded
a greater role for counsel. This is especially true
for the following day (August 19, 2005) where
the defendant made certain statements that
purportedly caused a breach.

Specifically, on August 18, 2005, the relationship
changed between Cobb and the AUSA's and agents
interviewing him. No longer was it just a matter
of Cobb recounting the details of his criminal
conduct and the conduct of others, Cobb became
the suspect, the center of a major investigation,
where as he was being accused of accepting
a bribe to obstruct justice.

Continuation of Page 5,
Supporting Ground
        One:

After consistently denying these allegation at the
meeting on August 18th prosecutors and case agents
become up-set with the suspect, repeatedly Called
him a liar, vehemently told Cobb "to consider his
options over-night," and fled the meeting under
the notion that the suspect Cobb had taken a
bribe behind the government's back (See 78). Predicated
on these circumstances, prosecutors and agents were
armed with extensive knowledge concerning the
potential danger the next day (August 19th) held
and also knew that this meeting would be any-
thing but the "meet and debrief" Enumerated
within the scope of the waiver provision.

In good faith and fair dealings implicit in the
cooperation agreement, the government had an
obligation to facilitate representation by counsel
for the suspect Cobb on August 19, which constituted
the meeting where Cobb made certain statements

_____

1. "78" refers to fact Supporter, transcript pages
taken from November 13, 2006 Evidentiary hearing
and enclosed herein.

Dayton - Cross/Gentile

1    A    With respect to this one?

2    Q    This investigation trying to get the $500,000, nothing

3    from a proactive investigation has occurred?

4    A    We thought it didn't go through.  We let it go.

5    Q    Okay.

6         You described the meeting on August 18th as being he's

7    defensive, he's evasive, right?

8    A    Yes.

9    Q    Ms. Pokorny in her letters to the Court made the

10   following statement --

11   A    I didn't use the word evasive.  Actually I used the word

12   defensive and difficult, I think I said.

13   Q    This is the question I have:  Ms. Pokorny characterized

14   the following at August 18th, with the level of knowledge

15   that you have of the circumstances, is this - and she said

16   this in both her letters:  The government expressed concern

17   that Cobb had not been honest about the bribe.

18        On August 18th, this is the first meeting since the

19   surveillance?

20   A    Right.

21   Q    You, Ms. Pokorny, Sean Haran, see him at a meeting and

22   say, you are not really being honest about what is happening

23   here?

24   A    No, that's not how it went.

25   Q    These are her words?

Case 1:10-cv-05494-FB   Document 1   Filed 11/02/10   Page 8 of 30 PageID #: 8

Dayton - Cross/Gentile

1   A    By the end of the meeting - we were there for a long

2   time, Mr. Gentile - by the end of the meeting, yes, that's

3   how we felt.

4   Q    And the reason why you felt this way is primarily

5   because his body language wasn't as cooperative as it had

6   been back two months earlier, like when you are sitting with

7   him with regard to trying to get "World" to accept the money?

8   A    No, that's not true.

9   Q    Well, throughout the entire meeting on August 18th, your

10  testimony is that he never acknowledged acceptance of the

11  bribe?

12  A    Correct.  On August 18th, he never acknowledged

13  acceptance.  He got to the point where he stopped denying

14  that he had taken it, though.

15  Q    Well, ten days ago we had an agent in here who was also

16  present at that August 18th meeting, okay.

17  A    Okay.

18  Q    And on three separate occasions this agent testified

19  clearly, unequivocally, that on August 18th he told you folks

20  he took the bribe on August 18th.

21       Do you recall it that way?

22  A    No, the agent is wrong.

23  Q    So the agent is wrong about his testimony on that

24  particular aspect?

25  A    You know, I can't tell you it is August 19th.  It was a

Dayton - Cross/Gentile

1  both of her letters the following about that meeting:

2  Nevertheless - this is about the first meeting now - Cobb was

3  evasive about how the bribe had been paid, who the

4  participants were, and where the money had gone.

5      Did that happen -- I'm sorry, withdrawn.

6      Let me ask you this question again.  The last sentence

7  she uses this terminology twice with regard to this first

8  meeting:  Cobb was told to consider his options overnight.

9  A    That's right.

10 Q    And the option that he was told to consider was either

11 tell us what happened to this money, which he had not

12 acknowledged he had taken at that point, or what, we were

13 going to breach your agreement?

14     What is this option about overnight?

15 A    To tell the truth or not to tell the truth.  Those were

16 his two options.  Those were always his two options.

17 Q    But when the government comes on August 18th, you folks

18 are kind of upset.  One, you got money that you think might

19 be out there on the street, correct?

20 A    No.

21 Q    That's not a concern of yours at all?

22 A    It is not.  Honestly, we walked in there, as I said, for

23 him to meet the other prosecutors.  We thought the money had

24 gone by the wayside.  His attitude was so bad, as we were

25 trying to, you know, familiarize Sean Haran with the case and

Dayton - Cross/Gentile

1  Friday in August, the day after we had seen him.  So if you

2  are saying it was the 18th, I don't know if it was the 18th

3  or 19th.  It was a Friday.

4  Q    So on August 18th - we haven't seen this man for two

5  months - now three Assistant U.S. Attorneys visit him with

6  two case agents, and do you remember Ms. Pokorny saying to

7  him at one point during this meeting, your body language

8  tells me you took the money.

9       Do you remember those words?

10  A    No, honestly.

11  Q    Your recollection of that --

12  A    Honestly, I don't remember her saying that, no.

13  Q    So, a pen register doesn't show us anything.  We don't

14  have any words from him saying I took the money on August

15  18th.  But the whole tenor of August 18th is, we think you

16  took the money?

17  A    No, that's wrong.

18  Q    That's wrong?  That's not the tenor?

19  A    No.  The tenor was, hi, this is Sean Haran.  He's going

20  to be working the case with us.  We want you to meet him.  He

21  may be putting you on the stand, because at that time I was

22  having health problems, knew it, and knew I might be leaving

23  the office.  We were trying to introduce a new prosecutor

24  into the case.

25  Q    Let me ask you something.  When Ms. Pokorny writes in

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

Dayton - Cross/Gentile

1   with Mr. Cobb, that it became obvious during the course of

2   the meeting that something was problematic.

3   Q    This is what this assistant wrote in the letter before

4   we started the hearing about the first meeting?

5   A    If you would show me the letter, it might help me.   I

6   don't work for the office anymore, so.

7   Q    Take a look at what Ms. Pokorny wrote.

8        May I, Judge?

9        THE COURT:  She testified what happened at that meeting.

10  Mr. Gentile is suggesting something else happened.

11       Look at the letter and tell me about it?

12  Q    Referencing the second line, if you don't mind taking a

13  look at it?

14  A    This one here?

15  Q    Yes?

16       (Pause)

17  A    Okay.   That is true

18       THE COURT:  Is that the day he told you that the

19  money was delivered to World or somebody else, or was that on

20  a subsequent date?

21       THE WITNESS:  He told us the next day.

22       What that talks about, your Honor, is that during

23  the course of the meeting, I think it says he was evasive,

24  and we being the government - which I was at that time -

25  expressed concern that he wasn't being honest.

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

Dayton - Cross/Gentile

1    THE COURT:  So this was the first day, August 18th,

2  you believed he was being evasive.  You confronted him

3  whether he was being candid?

4    THE WITNESS:  Right.

5    THE COURT:  The next day is when he did say the

6  money was delivered, right?

7    THE WITNESS:  That's right, yes.

8    THE COURT:  I got the money?

9    THE WITNESS:  I got the money, right.

10    THE COURT:  You took that to mean that the money was

11  given to World, though he didn't say it specifically that

12  World got the money, did he?

13    THE WITNESS:  He ended up -- first he said he got

14  the money, then he explained --

15    THE COURT:  Then he explained World had it.

16    THE WITNESS:  For him, yes.

17    THE COURT:  Later on it was divided into two parts.

18  One part went south to a woman that was like his mother and

19  the other part went into a stash house, and you were trying

20  to retrieve the money thereafter.

21    Go ahead, Mr. Gentile.

22  BY MR. GENTILE:

23  Q   At the first meeting Ms. Pokorny wrote the letter to the

24  Judge the day before this hearing started.  The government

25  expressed concern that Cobb had not been honest about the

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

Dayton - Cross/Gentile

1    bribe.

2    A    That's right, we did.

3    Q    At the first meeting?

4    A    Right.

5    Q    Even though he's saying to you, I didn't get no money,

6    no bribe money, maybe Robinson even withdrew the bribe.   He

7    didn't know.   That's what he's saying to you?

8    A    Well, he said a lot of things to us that day.   We were

9    with him for quite some time.   And during the course of our

10   meeting with him, when he was being very defensive, we

11   brought up the issue of the money, and we specifically asked

12   him about it at that point.

13       We also went through other issues like, does this have

14   something to do with Jackie Anderson?   Does this have

15   anything -- something to do with the fact you got caught in

16   the bathroom with your girlfriend?   We asked him about a lot

17   of questions.   Those weren't relevant in the end.

18   Q    What was relevant in the end was, did you guys ask him

19   about the bribe money on the 18th?

20   A    Yes, we asked him about it.

21   Q    And did you folks express extreme reservation about him

22   not knowing where the money was?

23   A    I said, I think you are lying.   So I basically told him

24   he was a liar, yeah.

25   Q    And the basis for you to call him a liar at that meeting

Dayton - Cross/Gentile

1    was predicated on what honest knowledge did you have when you

2    walked in on August 18th?

3    A    Because he couldn't answer a question straight, and I

4    had spent enough time with him to know that he understood

5    what I was asking him, and that he knows how to answer

6    questions, and he was all over the place, Mr. Gentile.  I'm

7    sure you had this experience with people.

8            THE COURT:  That's the basis for her belief that he

9    was lying.  That's what she says.

10           Go ahead, next question.

11   BY MR. GENTILE:

12   Q    So when Ms. Pokorny's words that he was told to consider

13   his options overnight, the option to come back the next day

14   is either to continue your denial or come back with better

15   information about what is going on with this bribe?

16   A    No, that's not right.

17   Q    Okay.  I will leave it at that.

18   A    Can I explain my answer?

19           THE COURT:  Go ahead.

20   Q    You can explain all the time.

21   A    He was told to tell the truth, that was his option.  If

22   he couldn't tell the truth about things, there were other

23   things he was not telling the truth about, too.  The fact

24   that he was using another inmate's PIN number.

25   Q    And that caused a lot of upset in the room, didn't it?

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑  No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____


**GROUND TWO:** INEFFECTIVE ASSISTANCE OF COUNSEL.
_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): The attoreny, Joseph A. Gentile failed to present to this court exculpatory evidence that was ready-aviable prior to evidentiary hearing. On approximately the 9 th day of March, 2006, this attorney wrote a letter to the defendant Kenneth Cobb (see enclosed letter marked "FS1" =for fact supporter one),vehemently expressing the need to incorpoerate new factual evidente into our line of defense,such evidence was obtained by Mr.Gentile via him listening to the Curtis Medley's CD's/tapes which were provided by the government as discovery material (see "FS2).

(b) Direct Appeal of Ground Two:

(1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes ❑  No ❑

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

Continuation of Page 6.
Supporting Ground
       Two:

Shortly thereafter said statement to the defendant,
counsel composed a motion which announced the
court's need to review this material (Curtis Molley's CDs)
(See excerpts from motion marked 783) in order to fully
appreciate the factual position of the defense. The
aim of the motion was to subdue an evidentiary hearing.
However, the very vehicle (motion telling the court
how important it is to listen to CDs/tapes) counsel
use to obtain the hearing, he later abandoning by
failing to present this material to the court and
utilize it to impeach witnesses testimony and
exculpate the defendant.

Specifically, during the two days (November 1, 2 13, 2006)
which consist of the evidentiary hearing, the government's
witnesses gave extensive testimony predicated on
information allegedly taken from the CDs (see excerpt
from hearing marked 784). Upon rendering a decision
on the evidentiary hearing, your honor credited
the testimony of government's witnesses and determined
that the defendant was not a credible witness in
this matter (after he testified at hearing) and therefore

Continuation of Page 6,
Supporting Ground
Two

Could not be useful to the government in future
trials as a cooperating witness. In retrospect, had
counsel utilized the Curtis Medley's CD's/tapes,
they would have both impeached the testimony
of government's witnesses while simultaneously
lent credibility to that of the defendant. Counsel's
performance was prejudicial to Cobb's hearing
whereby causing the Trial Finder (court) to render
an adverse decision and determination. The
defendant ask for a hearing (evidentiary hearing)
in this matter so he can present the CD's to
this court and vindicate himself.

**Frankie & Gentile, P.C.**

Attorneys at Law

1565 Franklin Avenue

Suite 100

Mineola, New York 11501

516-742-6590

Fax: 516-742-6875

James G. Frankie
Joseph A. Gentile

March 9, 2006

Kenneth Cobb
ID#63082-053
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

Re: United States v. Cobb
    CR 04-205 (FB)

Dear Mr. Cobb:

Notwithstanding our last correspondence, we have reached the point where we must finalize motions in this matter. Enclosed is a revised preliminary statement and memorandum of law outlining the legal issues. There are no changes to the second point but there are substantial changes to Point I concerning the breach of the cooperation agreement.

In fact, those changes incorporate all of the new factual materials based on listening to the jail tapes and the one consent recording of August 22, 2005. Please review these materials. We will discuss any factual changes that need to be made and you should decide whether to submit the second point of law or legal issue. At this stage, I believe you have no choice but to submit any appropriate legal issues for review by the Court. In any event, our motions should be filed near the date of the next Court appearance.

Very truly yours,

Joseph A. Gentile

df
Enc.



**Frankie & Gentile, P.C.**

Attorneys at Law

1565 Franklin Avenue

Suite 100

Mineola, New York 11501

516-742-6590

Fax: 516-742-6875

James G. Frankie
Joseph A. Gentile

January 23, 2006

Kenneth Cobb
ID#63082-053
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

Re: United States v. Cobb
    CR 04-205 (FB)

Dear Mr. Cobb:

Enclosed with this letter, please find the CD's which we received
from the government which are the phone calls that you made from
April, 2005 through August, 2005.

If you have any questions, please feel free to call me.

Very truly yours,

Joseph A. Gentile

df
Enc.

denied contact with another or refused to testify, the circumstances in this case present a scenario

where the government has elected to terminate the agreement due to the apparent failure to

successfully complete a pro-active investigation hampered by the inherent nature of the

defendant's incarceration.  See United States v. Brechner, 99 F.3d 96 (2d Cir. 1996); United

States v. El-Gheur, 201 F.3d 90 (2d Cir. 2000).  At the same time, the defendant provided almost

twenty hours of informational debriefings which assisted in the prosecution of a co-defendant

and also assisted in the prosecution of major unrelated investigations and prosecutions.  In this

case, the government attempted to create a pro-active investigation where a target of the

unrelated investigation would pay the defendant a significant sum of money through an

intermediary "on the street".  The defendant's assistance was based on attempting to coordinate

these activities through phone calls from the MCC.  Unfortunately, the inherent limitation of

being incarcerated inhibited the ability of the defendant to control the activities of the target or

the intermediary.

Accordingly, the attempts to conduct a surveillance or intercept the "drop-off" of

currency never occurred and the defendant has been improperly blamed for the failure of this

experiment.  Essentially, the government now maintains that the defendant received bribe money

without any credible evidence to support their assertion in its February 17, 2006 letter.  In the

final analysis, this investigation failed because it is virtually impossible to control the actions of

"on the street" individuals when the cooperator is housed on the ninth floor of the MCC.  It is

manifestly unfair to expect any cooperator to be able to fulfill the expectations of this type of

investigation merely by making controlled phone calls from a jail tier.

The following analysis of the facts is predicted on a review of the audio taped jail

16

conversations of the defendant, conversations with Mr. Cobb and certain conversations with the prosecutors assigned to this matter.  It is important that the Court review these facts in order to appreciate the position of the defense,  and a review of the facts will require an evidentiary hearing in order to fully appreciate the position of the defendant in this matter.

Sometime in early April, 2005, the defendant Cobb advised AUSA Dayton that he had spoken with an acquaintance, Sterling Jenkins, a/k/a World, and Jenkins indicated that he met Ron Robinson, a/k/a Gutta, at a Manhattan night club.

Robinson was one of the named defendants on the original Murder Inc. indictment and was charged with money laundering.  The government believed he was involved with laundering funds to the Lorenzo brothers.  The defendant Cobb had advised the government that he had never directly dealt with the Lorenzo's but only dealt with Robinson in delivering drug proceeds in the past which may have passed to them through Robinson.  Obviously, the goal of the government was to eventually pressure Robinson into cooperating against the Lorenzo's.  At the meeting with Jenkins, Robinson supposedly  offered to pay up to $500,000 towards the legal expenses of Kenneth Cobb ostensibly to insure his silence with regard to any possible testimony against Mr. Robinson or the other Murder Inc. defendants.  Originally, Ron Robinson was a defendant joined with the Lorenzo brothers although his case, along with other defendants, was severed from the original indictment by Judge Korman.

Based on this revelation, the government actively pursued and requested that Mr. Cobb engage in conversations with Mr. Jenkins in order to determine if Robinson would deliver funds to the lawyer for Kenneth Cobb.  In that regard, a plan was devised where Cobb was provided by the government with the name of a fictitious lawyer with the understanding that Robinson would

17

86

1          THE COURT:   We can take him.  We have a 3:00

2  o'clock matter.   We'll accommodate Mr. Gentile by calling a

3  witness.

4          MR. GENTILE:   For me, it's ten minutes.

5          MS. POKORNY:   Might I ask the agent this?

6  Q   Was there any other confusion you want to clear up in

7  your testimony?

8  A   ████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████████

13 ███████████████████

14          We did not listen to tapes from the jail after

15 August, after that phone call he made for us on August 22nd.

16 We're trying to ascertain where the money transferred, not

17 where it had happened after that.   It was clear to us he had

18 it or had control of it.

19 Q   The August 22nd phone call between Mr. Cobb and Sterling

20 Jenkins, what was the purpose of that call?

21 A   That call was multifold.   We basically wanted, one, to

22 recover the money, the bribe money that he had already taken.

23          Second, we wanted to ensure there was a definitive

24 chain of custody we can show that was the money he was given

25 by Rob Robinson; therefore I asked Cobb to mention --

SS      OCR      CM      CRR      CSR

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

   Yes ❑   No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

   Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

   Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

   Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

(b)  **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

       Yes ❑  No ❑

    (2) If you did not raise this issue in your direct appeal, explain why: _____

    _____

    _____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

       Yes ❑  No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:_____

    Name and location of the court where the motion or petition was filed:_____

    _____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

    Result (attach a copy of the court's opinion or order, if available):_____

    _____

    (3) Did you receive a hearing on your motion, petition, or application?

       Yes ❑  No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

       Yes ❑  No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

       Yes ❑  No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:_____

    _____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ❑

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

_____

_____

_____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging? Yes ❑   No ☒

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _Joseph A. Grentile, 1565 Franklin Avenue Suite 100 Minecla, New York 11501_

(b) At arraignment and plea: _____

_____ _Same._ _____

(c) At trial: _____

_____

(d) At sentencing: _____

_____ _Same_ _____

(e) On appeal: _Charles F. Willson, 102 Connecticut Boulevard East Hartford, CT 06108_

(f) In any post-conviction proceeding: _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

_____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐ No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:  _____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes ☐ No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:
    A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
        (1) the date on which the judgment of conviction became final;
        (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
        (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
        (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: *Vacate the Sentence and resentence Cobb with the government ordered to file a 5K1.1 motion on behalf of the defendant.*

or any other relief to which movant may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion Under 28 U.S.C. § 2255 was placed in the prison mailing system on *October 25, 2010* (month, date, year).

Executed (signed) on _____ (date).

SUBSCRIBED AND SWORN BEFORE ME
THIS 23rd DAY October 20 10
FEDERAL CORRECTIONAL COMPLEX, VICTORVILLE, CA
SAN BERNARDINO COUNTY
J. Clifford Acc
CASE MANAGER
AUTHORIZED BY ACT OF CONGRESS JULY 7, 1955
TO ADMINISTER OATHS
(TITLE 18, U.S.C. SECTION 4004)

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion _____

_____

_____

Kenneth D. Cobb
FCY Victorville One
P.O. Box 5300
Adelanto, CA 92301


October 24, 2010


Hon. Frederic Block
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

**FILED**
IN CLERKS OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 02 2010 ★

**BROOKLYN OFFICE**

Re: United States v. Kenneth Cobb 04-Cr-205 (FB)

Dear Judge Block:


All documents previously submitted to this
court on behalf of the defendant, was done
as under seal, ending with the Appeal court for
the Second Circuit hearing Cobb's Issues in a
closed court room. Due to these circumstances and
those surrounding this case, the defendant ask
that the enclosed motion be filed under seal.


Respectfully Submitted
Kenneth D. Cobb
Kenneth D. Cobb